UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ROBERT J. ARCIELLO, FRANCIS J. GOREY,
JR., DIANE MASTROPAOLO, GLEN F.
TUIFEL, DANIEL E. SPEICHER,
LAWRENCE J. LOISELLE, JOSEPH T.
WHITTAKER, JAMES SHARKEY, KIRK
FOWLKES, JOHN CLOUDMAN, NICHOLAS
PALMESE, JOHN OCHWAT, and all others
similarly situated,

                        Plaintiffs,

   -against-

COUNTY OF NASSAU and EDWARD
MANGANO, in his individual and official
capacity,

                       Defendants.
-------------------------------------------------------------------x

**MEMORANDUM & ORDER**
16-cv-3974 (ADS)(SIL)

**LOCKE, Magistrate Judge:**

Plaintiffs Robert J. Arciello, Francis J. Gorey, Jr., Diane Mastropaolo, Glen F.

Tuifel, Daniel E. Speicher, Lawrence J. Loiselle, Joseph T. Whittaker, James

Sharkey, Kirk Fowlkes, John Cloudman, Nicholas Palmese, and John Ochwat

(collectively "Plaintiffs") commenced this action, on behalf of themselves and all other

similarly situated persons, seeking, among other things, unpaid overtime

compensation from Defendants County of Nassau (the "County"), Edward Mangano,

in his individual and official capacities (together with the County, "Defendants"), and

Nassau County Civil Service Commission, pursuant to the Fair Labor Standards Act

of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.* and the New York Labor Law

("NYLL").  *See* Complaint ("Compl."), Docket Entry ("DE") [1].

Currently before the Court, on referral for decision from the Honorable Arthur D. Spatt, is Plaintiffs' motion for an order:  (i) conditionally certifying this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b); (ii) compelling Defendants to provide Plaintiffs' counsel with a computer-readable data file containing the names, addresses, and telephone numbers of potential opt-in members, namely, current and former nonexempt employees of the County dating back six years from the filing of the Complaint; (iii) authorizing circulation of a proposed Notice of Lawsuit With Opportunity to Join (the "Proposed Notice"), *see* DE [14-1], Ex. N, to all similarly situated individuals via United States Postal Service first-class mail; and (iv) authorizing the posting of the Proposed Notice in both Newsday and Plaintiffs' union newsletter, CSEA Express.  *See* DE [14].  Defendants oppose conditional certification and certain aspects of the Proposed Notice.  *See* DE [21].  For the reasons stated herein, Plaintiffs' motion is granted in part and denied in part as set forth below.

## I.  Background

The following facts are taken from the Complaint and the declarations submitted in support of the instant motion, and are accepted as true for purposes of this motion.

### A.  Facts

The County is a municipal corporation incorporated under the laws of the State of New York.  *See* Compl. ¶ 21.  Plaintiffs, current employees of the County, hold various positions within the Sheriff's Department, Department of Social Services,

Police Department, Fire Marshal's Office, Department of Recreation and Parks, Department of Public Works, and Department of Health. *See id.* ¶¶ 9-20. Plaintiffs were hired by the County in or before January 2007, *see id.*, and each Plaintiff is classified as nonexempt from the FLSA's overtime requirements, *see id.* ¶ 3.

Plaintiffs have all "experienced an average four-week lag in overtime payment since as far back as [they] can remember." *See, e.g.*, Declaration of Robert J. Arciello ("Arciello Dec."), DE [14-1], Ex. B, ¶ 5. The lag in overtime payment worsened starting in 2009, when the County integrated Intime, a computerized timekeeping application, into its payroll system. *See* Compl. ¶¶ 37-42; Arciello Dec. ¶¶ 5-8. Plaintiffs dealt with "many problems" with respect to their paychecks while the County was transitioning systems. *See, e.g.*, Arciello Dec. ¶ 7. Even after such problems were resolved, Plaintiffs consistently experienced six- to eight-week delays in payment of their overtime wages. *See, e.g.*, *id.* ¶ 8-9. Moreover, when Plaintiffs eventually received their overtime wages, their pay stubs did not specify the day, week, or month to which those wages corresponded. *See, e.g.*, *id.* ¶ 10.

On November 30, 2015, Plaintiffs' union, the Civil Service Employees Association ("CSEA"), filed a grievance notifying the County of the delays in payment of overtime wages. *See id.* ¶ 11. Yet, notwithstanding that notice, the County's failure to promptly pay employees for overtime persisted. *See* Compl. ¶ 5. According to Plaintiffs, the delays still remain a County-wide problem. *See id.* Indeed, in Plaintiffs' declarations submitted in support of the instant motion, they specifically

3

identify additional County employees who, like them, have not been paid overtime wages in a prompt manner.  *See, e.g.*, Arciello Dec. ¶ 14.

### B. Procedural History

By way of Complaint dated July 18, 2016, Plaintiffs initiated this lawsuit seeking to recover, among other things, damages pursuant to the FLSA and NYLL. *See* Compl. ¶¶ 1-4.  Plaintiffs assert their claims on their own behalves and on behalf of all County employees who have not received, and continue not to receive, earned overtime compensation by their scheduled payday.  *See id.* ¶ 6.

On August 8, 2016, Defendants filed a motion to dismiss portions of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  *See* DE [5], [6], [7].  On February 7, 2017, the Honorable Arthur D. Spatt issued a Decision & Order which, among other things, dismissed Plaintiffs' claim for discrimination under 42 U.S.C. § 1983 and dismissed all claims against Defendant Nassau County Civil Service Commission.  *See* DE [13].

Plaintiffs now seek an order conditionally certifying this case as an FLSA collective action and permitting Plaintiffs to send "notice of pendency to potential collective action members, current and former non-exempt employees, employed by [] Defendants dating back six years from the filing of the [C]omplaint" pursuant to 29 U.S.C. § 216(b).  *See* Plaintiffs' Memorandum of Law in Support of Their Motion to Proceed as a Collection Action and to Facilitate Notice Under 29 U.S.C. Section 216(b) ("Pl.'s Mem."), DE [14], at 1.  Plaintiffs claim they have made the required "modest factual showing" that they, and other nonexempt employees of the County, "were

victims of [the County's] common policies and plans that violate the FLSA and NYLL." Pl.'s Mem. at 3.  Plaintiffs also argue that they have "established a sufficient factual nexus between their situation and that of the other nonexempt employees employed by [the County]" such that conditional certification should be granted.  *Id.* Plaintiffs further seek authorization to post notice of the collective action in both Newsday and their union newsletter, CSEA Express, and mail notice and consent forms via United States Postal Service first-class mail to potential class members. *See id.* at 9.   In addition, Plaintiffs ask the Court to "direct Defendants to provide their counsel with a list of the names, addresses, phone numbers and dates of employment of all potential collective action members, which are current and former nonexempt employees of [the County] dating back six years from the filing of the Complaint on July 18, 2016." *Id.* at 10.  In support of their motion, Plaintiffs each submit a declaration describing the County's alleged violations and identifying other employees purportedly affected by such violations.  *See, e.g.*, Arciello Dec. ¶¶ 3-18.

In opposition, Defendants point out that not all County employees utilize the Intime system, and argue that, consequently, the proposed collective action members are neither similarly situated nor victims of a common policy or plan.  *See* Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification of a Collective Action Under the FLSA ("Def.'s Mem."), DE [21-1], at 4.  Moreover, Defendants argue that, if the Court were to grant certification, notice should be limited to two years because the statute of limitations for claims under the FLSA is two years for non-willful violations, and there is no evidence that Defendants willfully

violated the FLSA.  *See id.* at 5.  For the same reason, Defendants assert that Plaintiffs' request for information about potential class members should be limited to two years.  *See id.* at 9.  Defendants also object to Plaintiffs' request to publish the Proposed Notice in Newsday and CSEA Express.  *See id.* at 9-10.  Finally, Defendants contend that the Proposed Order should be modified in several respects and submitted to the Court for approval before it is distributed.  *See id.* at 8.

## II. Discussion

Pursuant to Section 207 of the FLSA, employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are] employed" for every hour worked in excess of forty in a given work week.  29 U.S.C. § 207(a)(1).  The FLSA further provides:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "[D]istrict courts 'have discretion, in appropriate cases, to implement [Section 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S. Ct. 482 (1989)).  For the following reasons, the Court will:  (i) conditionally certify the action as an FLSA collective action; (ii)

authorize the posting and dissemination of notice of the action; and (iii) compel Defendants to produce contact information for potential opt-in plaintiffs, subject to the conditions set forth below.

## A. **Conditional Certification**

Courts in the Second Circuit apply a two-step analysis to determine whether a collective action under Section 216(b) of the FLSA should be certified. *Myers*, 624 F.3d at 554. First, the court evaluates whether the proposed class members are "similarly situated" to the named plaintiffs. *See Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court finds that the proposed class members are similarly situated, each member must consent in writing to be bound by the result, or "opt in." *Id.* (citing 29 U.S.C. § 216(b)). The second step generally occurs following completion of discovery and requires examination of the evidentiary record to ascertain whether the opt-in plaintiffs are, in fact, similarly situated. *Bifulco v. Mortg. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009). The present motion concerns only the first step of the certification process – whether the proposed class members are similarly situated such that conditional certification should be granted.

At the conditional certification stage, "the evidentiary standard is lenient." *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 58 (E.D.N.Y. 2011); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage."). Plaintiffs seeking conditional certification "need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together

were victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal quotation marks omitted).   At this stage, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits[,] or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (quoting *Francis v. A & E Stores, Inc.*, No. 06 CIV.1638, 2008 WL 2588851, at *2 (S.D.N.Y. June 26, 2008), *report and recommendation adopted as modified,* No. 06CIV1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) (internal quotation marks omitted)).

To be entitled to conditional certification, a movant is not required to prove an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see also Sexton v. Franklin First Fin., Ltd.*, No. 08-cv-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) ("'[N]othing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005))).   "Courts will certify broad classes where there is some showing that all members of the putative class performed the same duties . . . or that the employer had uniform company-wide employment practices." *Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8820, 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011) (internal citations omitted).   "It is not necessary for the purposes of conditional certification that the prospective class

members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs." *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009).  Rather, the appropriate inquiry is whether the prospective class members "were all similarly situated with *respect to being subject to the same policy* of being denied overtime compensation, and there exists a factual nexus among the plaintiffs." *Id.* (emphasis in original).  The determination that potential opt-in plaintiffs are similarly situated is typically based on the pleadings, affidavits, and declarations submitted by the plaintiff.  *See Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) ("[C]ourts in the Second Circuit routinely grant conditional certification for overtime claims based on the statements of the named plaintiff(s) and other supporting affidavits.").

In this case, Plaintiffs have made a sufficient factual showing that they and the potential collective action members – other nonexempt employees of the County who did not receive overtime compensation in a timely manner – were together victims of a common policy or plan that violated the FLSA.  The Complaint alleges that Defendants "had a policy and practice of refusing to promptly pay overtime compensation at the statutory rate . . . to Plaintiffs and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per workweek," Compl. ¶ 49, and that "[t]he County has been noticed of the issue but their failure to pay in a prompt manner is a continuing and ongoing problem," *id.* ¶ 5.  Those allegations are supported by Plaintiffs' respective declarations submitted in support of the instant motion, each of

9

which describes the County's practice of paying overtime wages six to eight weeks late, specifically names other County employees who have been affected by such delays, notes that the CSEA filed a grievance with the County relating to the delayed payment of overtime wages, and claims that the delays have continued even after the County became aware of the issue. *See* Arciello Dec. ¶¶ 9, 11, 12, 14; Declaration of Francis J. Gorey, Jr., DE [14-1], Ex. C, ¶¶ 9, 11, 12, 14; Declaration of Diane Mastropaolo, DE [14-1], Ex. D, ¶¶ 9, 11, 12, 14; Declaration of John Cloudman, DE [14-1], Ex. E, ¶¶ 9, 11, 12, 14; Declaration of Kirk Fowlkes, DE [14-1], Ex. F, ¶¶ 9, 11, 12, 14; Declaration of Nicholas Palmese, DE [14-1], Ex. G, ¶¶ 9, 11, 12, 14; Declaration of Daniel E. Speicher, DE [14-1], Ex. H, ¶¶ 9, 11, 12, 14; Declaration of Glen F. Tuifel, DE [14-1], Ex. I, ¶¶ 9, 11, 12, 14; Declaration of James Sharkey, DE [14-1], Ex. J, ¶¶ 9, 11, 12, 14; Declaration of Lawrence J. Loiselle, DE [14-1], Ex. K, ¶¶ 9, 11, 12, 14; Declaration of Joseph T. Whittaker, DE [14-1], Ex. L, ¶¶ 9, 11, 12, 14; Declaration of John Ochwat, DE [14-1], Ex. M, ¶¶ 9, 11, 12, 14. Plaintiffs have thus satisfied the lenient standard applicable at this stage by submitting evidence of a uniform, County-wide practice of untimely payment of overtime compensation. *See Vasquez*, 2011 WL 2693712, at *3 (noting that "[c]ourts will certify broad classes where there is some showing . . . that the employer had company-wide employment practices").

The Court is unpersuaded by Defendants' argument that Plaintiffs are not similarly situated to the proposed collective action members because "not all County employees use the [Intime] system as an interface for their time management." Def.'s Mem. at 4. While the Complaint does suggest that the County's transition to the

Intime system contributed to the delays in overtime payments, *see, e.g.*, Compl. ¶¶ 37-42, nowhere do Plaintiffs allege that only those employees using Intime experienced such delays.  Instead, Plaintiffs assert that Defendants' policy and practice of refusing to promptly pay overtime compensation has affected both those employees that use Intime and those that do not.  And according to Plaintiffs' declarations, those delays began before the County implemented the Intime system. *See, e.g.*, Arciello Dec. ¶ 5.  In light of the evidence that the County's allegedly unlawful practices are widespread and impact employees beyond those using Intime, the Court finds a sufficient "factual nexus" between Plaintiffs' situation and the situation of the proposed collective action members such that conditional certification should be granted.[1]  *See Sobczak*, 540 F. Supp. 2d at 362 ("Courts regularly grant motions for approval of a collective action notice 'based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.'" (quoting *Wraga*, 2006 WL 2443554, at *2)).

### B. <u>Notice Period</u>

The Court must next determine the appropriate timeframe applicable to the conditional certification.  Plaintiffs seek permission to include as potential collective action plaintiffs "[a]ll non-exempt employees who worked for [] Defendants at any time during the time period of July 18, 2010 to July 18, 2016."  Proposed Notice at 2.

---

[1] For the same reasons, Defendants' argument in the alternative – that the Court should deny Plaintiffs' application for conditional certification as to the proposed collective action plaintiffs who do not utilize the Intime system, *see* Def.'s Mem. at 5 – lacks merit.

11

A six-year notice period is appropriate, Plaintiffs contend, because their NYLL claims are subject to a six-year statute of limitations, *see* N.Y. Lab. Law §§ 663(1), (3), and such claims could fall within this Court's supplemental jurisdiction by virtue of 28 U.S.C. § 1367(a), even absent a class certification pursuant to Fed. R. Civ. P. 23.  *See* Pl.'s Mem. at 10-11.  Plaintiffs note that several courts in this District have required defendants facing both FLSA and NYLL claims to provide relevant contact information of potential class members for a six-year period prior to the commencement of the action.  *See id.* at 10 (citing *Sharma*, 52 F. Supp. 3d at 461; *Cano*, 2009 WL 5710143, at *10; *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 66 (S.D.N.Y. 2009); *Wraga*, 2006 WL 2443554, at *3).  Defendants, however, insist that a two-year notice period is proper because Plaintiffs have presented no evidence that Defendants willfully violated the FLSA.  *See* Def.'s Mem. at 5.  Citing *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 396, 400 (E.D.N.Y. 2011), Defendants posit that "[t]he 'growing trend' in this District . . . is to limit the notice period to the applicable limitations period under the FLSA . . . ."  Def.'s Mem. at 5.

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Jie Zhang v. Wen Mei, Inc.*, 14-CV-1647, 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015) (citing *Summa*, 715 F. Supp. 2d at 388); *see Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 n.2 (E.D.N.Y. 2005) (finding allegation of willful violation justified notice

12

based on a three-year statute of limitations period); *see also Alvarez v. IBM Restaurants, Inc.*, 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) ("The Plaintiffs have alleged willfulness in their Complaint . . . and the Defendants deny these allegations. Courts in this circuit have generally held that where willfulness is in dispute, a three-year statute of limitations applies at the conditional certification stage.").

Here, the Complaint repeatedly alleges that Defendants willfully violated the FLSA. *See, e.g.*, Compl. ¶ 25 ("Plaintiffs and other FLSA Collective Plaintiffs . . . are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them in the proper overtime premium . . . ."); *id.* ¶ 50 ("Defendants knowingly and willfully violated Plaintiffs' and FLSA Collective Plaintiffs' rights by failing to promptly pay them to [sic] overtime compensation they earned."). And Plaintiffs' allegations of willfulness are substantiated by their declarations, which state that the County's practices did not change even after their union filed a grievance relating to the delays. *See, e.g.*, Arciello Dec. ¶ 12 ("Defendants have been made aware of this issue, yet they have continued to willfully delay the payment of my overtime wages to me."). Accordingly, Plaintiffs have, at this juncture, sufficiently alleged willful conduct by Defendants.

The next issue, then, is whether either a three-year or a six-year notice period is appropriate in the present case. District courts in this Circuit have reached inconsistent conclusions with respect to this issue. *Compare Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) ("Authorizing notice for

a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal articulated in *Hoffmann*[-*La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)].”), *with Cano*, 2009 WL 5710143, at *10 (“[T]his Court finds it prudent and expedient in this case to allow a six-year period to apply, even if some recipients of the notice will have claims that are time-barred under the FLSA.”).  The more recent trend, however, is to “approve three-year notice periods to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.”  *Mongiove v. Nate's Corp.*, No. 15CV1024, 2016 WL 590460, at *6 (E.D.N.Y. Feb. 11, 2016) (quoting *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 CIV. 5119, 2014 WL 1998236, at *1 (S.D.N.Y. May 13, 2014) (internal quotation marks omitted)); *see also Lujan v. Cabana Management, Inc.*, 10-CV-755, 2011 WL 317984, at *9 (E.D.N.Y. 2011) (limiting notice period to three years); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) (same).

The instant motion seeks certification only with respect to Plaintiffs’ FLSA claims, not their NYLL claims, and Plaintiffs have not yet moved for class certification of their NYLL claims pursuant to Fed. R. Civ. P. 23.  Thus, the notice Plaintiffs seek to distribute would be directed only to those persons eligible to opt in to the FLSA collective action.  It would therefore be unnecessarily confusing for employees who are ineligible for the FLSA opt-in class to receive a notice that pertains only to the FLSA claims.  The Court finds that the resulting inefficiency

14

weighs against notice to County employees going back six years, rather than three years, particularly given the large number of potential collective action members.[2] *Cf. Moore*, 276 F.R.D at 60 (permitting a six-year notice period, in part because "the number of Plaintiffs and potential plaintiffs as represented d[id] not appear to be very large"). Further, although the Court may eventually certify a class for the NYLL claims, that class would be opt-out, not opt-in, in nature; thus, those class members would face no risk of claim lapse, even if they did not receive notice of this case in a timely manner. *See Hamadou*, 915 F. Supp. at 668. Accordingly, the Court will limit the timeframe for notification to the three-year period applicable to Plaintiffs' FLSA claims.

### C. Proposed Notice

1. Content of the Notice

Plaintiffs also move for an order authorizing dissemination of the Proposed Notice to all nonexempt County employees similarly situated to Plaintiffs. *See* Pl.'s Mem. at 8-9. With respect to the content of the Proposed Notice, Plaintiffs contend that the Court should approve the version attached to their motion, *see* DE [14-1], Ex. N, because it is "timely, accurate, and informative[.]" Pl.'s Mem. at 8. In support of that assertion, Plaintiffs argue that the Proposed Notice provides notice of the pendency of the action and the opportunity to opt in, gives clear instructions on how to opt in, accurately describes Plaintiffs' claims, and advises potential class members

---

[2] *See* Plaintiffs' Memorandum of Law in Further Support of Their Motion to Proceed as a Collective Action and to Facilitate Notice Under 29 U.S.C. Section 216(b) ("Pl.'s Reply Mem."), DE [22], at 8 ("[T]he sheer number of prospective collective action members is so huge, numbering in the thousands . . . .").

that they need not participate.  *See id.* at 9.  In addition, Plaintiffs point out that the Proposed Notice informs potential class members that Defendants will defend against the claims, and that retaliation or discrimination for participation in a FLSA action is prohibited.  *See id.*

Defendants argue that the Proposed Notice is defective in several respects and, as such, should not be approved as submitted.  *See* Def.'s Mem. at 6-7.  As an initial matter, Defendants request that the Proposed Notice be modified to reflect all rulings made by this Court in connection with the instant motion.  *See id.* at 6.  Defendants also contend that the Proposed Notice should inform recipients about the possibility that they could be responsible for court costs, state that the case is a matter of public record, and clearly delineate their counsel's contact information in addition to Plaintiffs' counsel's information.  *See id.* at 7.  Finally, Defendants request that the Proposed Notice instruct recipients to file their consent to join forms with the Court instead of Plaintiffs' counsel.  *See id.*

Neither the FLSA nor any court has expressly outlined what form court-authorized notice should take or what provisions the notice should contain.  *See Moore*, 276 F.R.D. at 58 (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007)).  It is well-settled, however, that "[t]he form of a court-authorized notice and provisions contained in it are left to the broad discretion of the trial court."  *Sobczak*, 540 F. Supp. at 364; *see Hernandez v. Immortal Rise, Inc.*, No. 11-cv-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012) ("[C]ourts have broad discretion to craft appropriate notices that effectuate the overarching policies of the

16

collective suit provisions [of the FLSA] and provide employees with accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." (internal quotation marks omitted)).

The Court concludes that a collective action notice may be disseminated to potential opt-in members.  Nevertheless, the Proposed Notice should be modified in several respects.  First, the notice should explain that this case – and any party's participation in it – is a matter of public record, as such an explanation is informative and Plaintiffs have not offered a specific objection to Defendants' request in this regard.  *See* Def.'s Mem. at 7.  Second, the notice should include revised language reflecting a three-year, instead of a six-year, notice period.  *See* Section II.B., *supra*.

Notwithstanding the foregoing, the Court agrees with Plaintiffs that the notice should not reference opt-in plaintiffs' potential liability for costs associated with the lawsuit and counterclaims that may be asserted by Defendants.  *See* Pl.'s Reply Mem. at 6.  Although some courts have approved language to this effect, *see, e.g.*, *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 110 (S.D.N.Y. 2003), many courts in this District have reached the opposite conclusion.  *See Guzman*, 2007 WL 2994278, at *8 ("Given the remote possibility that such costs for absent class members would be other than *de minimis* . . . I think such language is inappropriate."); *see also Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010).

17

Accordingly, the Court will not authorize language in the notice stating that opt-in plaintiffs may be required to pay damages and costs in the event they do not prevail.

Nor will the Court approve Defendants' request that the notice clearly delineate their counsel's contact information. Inclusion of defense counsel's contact information is not required to render an FLSA notice fair, and is likely to create confusion rendering distribution or collection of consent to join forms less effective. *See Chhab v. Darden Restaurants, Inc.*, 11 CIV. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege."). Similarly, the Court agrees with Plaintiffs that the notice should instruct opt-in plaintiffs to submit their consent to join forms to Plaintiffs' counsel. Although courts in this Circuit are split on this issue, where the notice states that potential plaintiffs may select their own attorney, as the Proposed Notice does here, "there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel." *Limarvin v. Edo Rest. Corp.*, No. 11 CIV. 7356, 2013 WL 371571, at *3 (S.D.N.Y. Jan. 31, 2013); *see Dilonez*, 35 F. Supp. 3d at 257 (permitting potential plaintiffs to submit consent forms to named plaintiffs' counsel); *Ritz v. Mike Rory Corp.*, No. 12 CV 367, 2013 WL 1799974, at *4 (E.D.N.Y. Apr. 30, 2013) (requiring potential plaintiffs to return consent forms to named plaintiffs' counsel "[i]n order to minimize the burden on opt-in plaintiffs who choose representation by [named] plaintiff's counsel, and to reduce the administrative burden on the court . . . ."); *see*

18

*also Mata-Primitivo v. May Tong Trading Inc.*, No. CV 2013-2839, 2014 WL 2002884, at *6 (E.D.N.Y. May 15, 2014) (recognizing that submission of consent to join forms to the court "might prove intimidating to potential opt-in plaintiffs and may prevent individuals from joining the action").  Upon receiving the completed forms, Plaintiffs' counsel shall promptly file them with the Court via the Case Management/Electronic Case Files (CM/ECF) system.  *See Dilonez*, 35 F. Supp. 3d at 258 ("[G]iven the advent of round-the-clock electronic filing, plaintiffs' counsel may, at times, be better equipped to expeditiously file returned consent forms.").

The Court has reviewed the Proposed Notice in its entirety and, save the issues described above, approves of its contents.  Thus, Defendants' request that the parties submit a jointly-proposed notice to the Court, *see* Def.'s Mem. at 8, is denied as unnecessary.

### 2.  Distribution of the Notice

With respect to the manner of distribution, Plaintiffs seek permission to send the Proposed Notice via United States Postal Service first-class mail and post it in both Newsday and their union newsletter, CSEA Express.  *See* Pl.'s Mem. at 9. Defendants submit a wholesale objection to Plaintiffs' request to publish the notice, *see* Def.'s Mem. at 9-10, but fail to specifically explain why they believe publication in CSEA Express is improper.  In view of the Court's "broad discretion to craft appropriate notices that effectuate the overarching policies of the [FLSA's] collective suit provisions and provide employees with accurate and timely notice concerning the pendency of the collective action . . . [,]" *Hernandez*, 2012 WL 4369746, at *6 (internal

quotation marks and citation omitted), the Court will permit Plaintiffs to both send the notice to potential opt-in plaintiffs via first-class mail and post the notice in CSEA Express. *See Rivera v. Harvest Bakery Inc.*, No. CV 13-00691, 2014 WL 3611831, at *5 (E.D.N.Y. July 7, 2014) (permitting publication of notice in local periodicals); *Gortat v. Capala Bros.*, No. 07-CV-3629, 2010 WL 1423018, at *12 (E.D.N.Y. Apr. 9, 2010) (finding publication of notice in local newspaper appropriate), *aff'd*, 568 F. App'x 78 (2d Cir. 2014).

The Court, however, agrees with Defendants that publication in Newsday, a general daily circulation, is overbroad and thus unwarranted. *See Sherrill v. Sutherland Glob. Servs., Inc.*, 487 F. Supp. 2d 344, 351 (W.D.N.Y. 2007) (denying request to disseminate notice by emailing, physically posting, mailing, and publishing it in an employee newsletter as "broader than necessary"). Plaintiffs have submitted no evidence or viable arguments establishing that notice by way of first-class mail and publication in CSEA Express would, together, be insufficient. To the contrary, Plaintiffs appear to concede that most nonexempt County employees receive CSEA Express. *See* Pl.'s Mem. at 7 ("Plaintiffs and a vast majority of all other nonexempt county employees employed by Defendants reside in Nassau County and receive the Union's newsletter, CSEA Express."). Moreover, notice via Newsday would be both over- and under-inclusive in scope. Common sense dictates that, if published in Newsday, the notice would be presented largely to persons not eligible to join the collective action, and also exclude from its reach potential opt-in members who do not

read that newspaper. Accordingly, the Court declines to permit Plaintiffs to publish the notice in Newsday.

**D. <u>Production of Potential Collective Action Members' Contact Information</u>**

In addition to the relief discussed above, Plaintiffs seek an order compelling Defendants to "furnish to Plaintiffs' counsel a computer-readable data file containing the names, addresses, and telephone numbers of all nonexempt county employees who currently work for or who have worked for Defendants dating back six (6) years from the filing of the Complaint . . . ." Pl.'s Mem. at 11-12. Defendants do not object to providing the type of information requested, but rather argue that the request should be limited to two years. *See* Def.'s Mem. at 9.

It is typically appropriate for courts in FLSA collective actions to order the discovery of names and addresses of potential opt-in plaintiffs. *See Ack v. Manhattan Beer Distributors, Inc.*, No. 11-CV-5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (noting that "[c]ourts routinely order discovery of names, addresses, and telephone numbers in FLSA actions"); *Capsolas v. Pasta Rest., Inc.*, No. 10 Civ. 5595, 2011 WL 1770827, at *3 (S.D.N.Y. May 9, 2011) (directing defendants to produce names, addresses, and telephone numbers for potential opt-in plaintiffs); *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *14 (E.D.N.Y. July 29, 2015) (observing that "[d]isclosure of the names, addresses, telephone numbers[,] and email addresses of putative class members is commonplace in this district because such information is essential to identifying and notifying potential opt-in plaintiffs").

As a general matter, the Court considers Plaintiffs' request to be appropriate, as the information they seek will not be "unduly burdensome or disruptive to [D]efendant[s'] business operations." *Sexton*, 2009 WL 1706535, at *13. Counsel for Defendants shall therefore provide the names, addresses, and telephone numbers of potential opt-in members in electronic format to counsel for Plaintiffs. For the reasons stated above, however, Defendants need only provide such information for potential collective action members employed by the County during the three-year period prior to the commencement of this action, consistent with the applicable FLSA statute of limitations.

## III. Conclusion

For all of the foregoing reasons, Plaintiffs' motion for an order: (i) conditionally certifying this action as an FLSA collective action; (ii) authorizing the posting and circulation of the Proposed Notice; and (iii) compelling Defendants to produce contact information for potential opt-in plaintiffs, is granted in part and denied in part as set forth above. The parties are hereby directed to submit to the Court within seven days an agreed-upon schedule for Defendants' production of potential opt-in members' contact information and Plaintiffs' provision of notice to potential opt-in members. Any and all consent to join forms shall be submitted to Plaintiffs' counsel within sixty days of the date on which Plaintiffs provide such notice.

Dated: Central Islip, New York
     October 30, 2017                **SO ORDERED**

                                    _s/ Steven I. Locke_
                                   STEVEN I. LOCKE
                                   United States Magistrate Judge