UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT J. ARCIELLO, FRANCIS J. GOREY,
JR., DIANE MASTROPAOLO, GLEN F.
TUIFEL, DANIEL E. SPEICHER,
LAWRENCE J. LOISELLE, JOSEPH T.
WHITTAKER, JAMES SHARKEY, KIRK
FOWLKES, JOHN CLOUDMAN, NICHOLAS
PALMESE, JOHN OCHWAT, and all others
similarly situated,

and

SHAWN BURNS, KEVIN BIEN, BRIAN M.
WISE, and all others similarly situated
Correction Officers

                          Plaintiffs,

    -against-

COUNTY OF NASSAU, and EDWARD
MANGANO, in his individual and official
capacity

                         Defendants.
-----------------------------------------------------------------x

**REPORT &
RECOMMENDATION**
16-cv-3974 (ADS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

    Plaintiffs Robert J. Arciello, Francis J. Gorey, Jr., Diane Mastropaolo, Glen F.

Tuifel, Daniel E. Speicher, Lawrence J. Loiselle, Joseph T. Whittaker, James

Sharkey, Kirk Fowlkes, John Cloudman, Nicholas Palmese and John Ochwat

(collectively "Plaintiffs") commenced this action, on behalf of themselves and all other

similarly situated persons, seeking, among other things, compensation for untimely

paid overtime from Defendants County of Nassau (the "County"), Edward Mangano,

in his individual and official capacities ("Mangano" and together with the County,

"Defendants"), and Nassau County Civil Service Commission ("NCCSC"),[1] pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL").  *See* Complaint ("Compl."), Docket Entry ("DE") [1].

Presently before the Court, on referral from the Honorable Arthur D. Spatt for Report and Recommendation is Plaintiffs' motion for class certification of the NYLL claims, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 23, *see* DE [212], and Defendants' cross-motion to dismiss Plaintiffs' NYLL claims pursuant to Fed. R. Civ. P. 12(c), *see* DE [220].  For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion for class certification be granted and that Defendants' cross-motion to dismiss be denied.

## I. BACKGROUND[2]

The County is a municipal corporation incorporated under the laws of the State of New York.  *See* Compl. ¶ 21.  Mangano was the Nassau County Executive from January 1, 2010 to December 31, 2017.  *See* Consolidated Complaint ("Consol. Compl."), DE [217], ¶ 30.  Plaintiffs, current and former employees of the County hired in or before January 2007, hold various positions within the Sheriff's Department, Department of Social Services, Police Department, Fire Marshal's Office, Department of Parks and Recreation, Department of Public Works and

---

[1] The NCCSC was dismissed from this action on February 7, 2017.  *See* DE [13].

[2] As the parties' familiarity with the underlying facts and extensive procedural history is presumed, the Court sets forth only background material that is directly relevant to the instant motions.

Department of Health.  *See* Compl. ¶¶ 9-20; *see also* Declaration in Support of Motion for Class Action ("Stober Decl."), DE [212-2], ¶¶ 6-17.

In 2009, the County integrated InTime, a computerized timekeeping application, into its payroll system.  *See* Compl. ¶ 37.  In addition to inTime, the County uses two other payroll systems, the Nassau Unified Human Resources System ("NUHRS") and CHIEFS.  *See* Plaintiffs' Memorandum of Law in Support of Motion for Class Certification ("Pl. Mem."), DE [212-1], 7.  While the County was transitioning to InTime, Plaintiffs dealt with "many errors and problems" with respect to their paychecks, including delays in receiving overtime wages.  *See* Compl. ¶¶ 38-39.  On average, Plaintiffs experience a minimum of a four-week delay in the payment of overtime wages, and in some departments, there is at least an eight-week delay.  *See id.* at ¶¶ 40-41; *see also* Stober Decl., Exhibit ("Ex.") A, June 6, 2018 Deposition of Kerrin J. Huber ("Huber Dep."), DEs [212-3]-[212-4], 72:11-73:22, 76:23-78:7, 78:11-79:15, 80:14-81:9, 82:12-83:20, 84:9-85:25, 86:11-87:23, 87:24-89:6, 89:7-90:17, 90:18-91:24, 93:16-94:18, 94:19-96:18.  Moreover, when Plaintiffs eventually received their overtime wages, their pay stubs did not specify the day, week or month to which those wages corresponded.  *See* Compl. ¶ 42.  Plaintiffs' union, the Civil Service Employees Association ("CSEA"), filed a grievance notifying the County of the delays in payment of overtime wages.  *See id.* at ¶ 43.  Yet, notwithstanding that notice, the County's failure to promptly pay employees for overtime remains an ongoing County-wide problem.  *See id.* at ¶¶ 5, 44-45; *see also* Stober Decl., Ex. B, Declaration of Robert J. Arciello ("Arciello Decl."), DE [212-5], ¶¶ 13-17.

3

By Complaint filed on July 18, 2016, Plaintiffs initiated this lawsuit seeking to recover, among other things, damages pursuant to the FLSA and NYLL.  *See* Compl. ¶¶ 1-4.  Plaintiffs assert their claims on their own behalves and on behalf of all County employees who have not received, and continue not to receive, earned overtime compensation by their scheduled payday.  *See id.* at ¶ 6.  On October 30, 2017, this Court granted the conditional certification of an FLSA collective action. *See* DE [34].  On September 20, 2018, Plaintiffs filed their motion to certify their NYLL claims as a class action pursuant to Fed. R. Civ. P. 23 to redress the problems that face the "thousands of other County of Nassau employees in the same titles as . . . Plaintiffs[.]"  Pl. Mem., 2.

After Plaintiffs filed the instant motion for class certification, and before Defendants filed their opposition, Judge Spatt consolidated this action with *Burns et al. v. County of Nassau et al.*, 17-cv-2721 (E.D.N.Y. 2017).  *Burns* was commenced on May 4, 2017, after Plaintiffs in the instant litigation filed their Complaint.  Like Plaintiffs, the *Burns* plaintiffs brought an action on behalf of themselves and all other similarly situated persons, against the County and Mangano pursuant to the FLSA to recover liquidated damages for delayed payments of overtime and other wages.  *See* 17-cv-2721 Compl., DE [1].[3]  Judge Spatt consolidated the instant action with the *Burns* action upon finding that the two actions relate to the same conduct and involve overlapping putative classes.  *See* DE [213].  Plaintiffs and the *Burns* plaintiffs filed

---

[3] Unlike Plaintiffs, the *Burns* Plaintiffs do not assert claims under the NYLL.  *See* 17-cv-2721 Compl., DE [1].  Additionally, the plaintiffs in *Burns* are employed as Correction Officers, unlike any of the Plaintiffs in this action.  *See id.*

a Consolidated Complaint on October 23, 2018 against the County and Mangano. *See* Consol. Compl., DE [217]. After the Consolidated Complaint was filed, Defendants filed their opposition and cross-motion to dismiss Plaintiffs' NYLL claims, on October 30, 2018. *See* DE [220]. Judge Spatt referred Plaintiffs' motion for class certification and Defendants' cross-motion to dismiss to this Court on April 1, 2019. *See* DE [247]. Because the outcome of Defendants' motion to dismiss Plaintiffs' NYLL claims determines whether the Court need address Plaintiffs' motion to certify its NYLL claims as a class action, the Court considers it first.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(c)

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion should be granted only where "all material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings." *Nathaniel v. City of N.Y.*, No. 16-cv-256, 2017 WL 3912986, at *1 (E.D.N.Y. Sept. 6, 2017) (internal quotation marks and citation omitted). The standard for analyzing a Rule 12(c) motion is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013). Accordingly, to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(c), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570, 127 S.Ct. 1955, 1975 (2007)).  A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (citation omitted).  In deciding a motion to dismiss under Fed. R. Civ. P. 12(c), as in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all allegations in the complaint and draw all inferences in the non-moving party's favor.  *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).  Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  The court may consider only the factual allegations in the complaint, documents incorporated by reference into the complaint, matters of which judicial notice may be taken and documents that are integral to the complaint and upon which the complaint relies heavily.  *Lockwood v. Town of Hempstead*, No. 16-cv-3756, 2017 WL 3769253, at *2 (E.D.N.Y. Aug. 28, 2017) (internal quotation marks and citation omitted).

**B. Fed. R. Civ. P. 23**

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 1432 (2013) (internal quotation marks and citation omitted). A party seeking to maintain a class action must demonstrate compliance with Fed. R. Civ. P. 23. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citation omitted). Courts undertake a two-step analysis to determine whether the requirements of Rule 23 have been met. First, "the court must be persuaded, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Perez v. Allstate Ins. Co.*, No. 11-cv-1812, 2014 WL 4635745, at *13 (E.D.N.Y. Sept. 16, 2014) (internal quotation marks and citation omitted). Rule 23(a) provides that class certification is permissible "only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition to the express requirements of Rule 23(a), the Second Circuit recognizes an "implied requirement of ascertainability." *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks and citation omitted). "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (internal quotation marks and citation omitted).

If a court determines that the Rule 23(a) prerequisites have been met, it must then determine "whether the class is maintainable pursuant to one of the subsections of Rule 23(b)[.]" *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 82-83 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016).  Rule 23(b) provides the types of relief available in a class action, as well as the rights of absent class members.  *Id.*; Fed. R. Civ. P. 23(b).  Here, Plaintiffs seek certification under Rule 23(b)(3), requiring that:  (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## III.  DISCUSSION

### A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(c)

Defendants move to dismiss Plaintiffs' NYLL claims, arguing that pursuant to Section 190(3) of the NYLL, the County is a "governmental agency" and is therefore exempt from Section 191 of the NYLL, which mandates the frequency with which payments must be made.  *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification and in Support of Defendants' Cross-Motion to Dismiss ("Def. Opp."), DE [220], 18-20.  Defendants further contend that the County is also a "municipal government" and, as such, is exempt, pursuant to N.Y.C.R.R. § 142-2.14(b), from the NYLL regulations for overtime, codified at 12 N.Y.C.R.R. § 142-2.2.  *See id.* at 20-21.  Accordingly, Plaintiffs' NYLL claims should be dismissed as a matter of law.  *See id.* at 17-18.

As a threshold matter, the Court addresses Plaintiffs' argument that Defendants have waived their right to assert any exemptions under the NYLL by failing to raise such exemptions in their responsive pleadings. *See* Plaintiffs' Memorandum of Law in Further Support of Motion for Class Certification and Opposition of Defendants' Cross-Motion to Dismiss ("Pl. Opp."), DE [227], 9-18.  In light of Plaintiffs' motion to strike Defendants' Answer to Plaintiffs' Consolidated Complaint ("Amended Answer") that was filed after Defendants filed the motion to dismiss, and which is currently pending before Judge Spatt, *see* DE [229], the Court considers only the affirmative defenses raised in Defendants' Answer to Plaintiffs' Complaint, *see* DE  [15], and does not consider the affirmative defenses raised in Defendants' Amended Answer or any arguments that overlap with arguments regarding Plaintiffs' pending motion to strike. *See, e.g.*, Defendants' Memorandum of Law in Further Support of Cross-Motion to Dismiss Plaintiffs' New York Labor Law Claims ("Def. MTD Mem."), DE [235], 12-15; Plaintiffs' Memorandum in Further Opposition to Defendants' Cross-Motion to Dismiss ("Pl. MTD Opp."), DE [237], *at passim.*

A party responding to a pleading "must affirmatively state any avoidance or affirmative defense," Fed. R. Civ. P. 8(c)(1), and generally, "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." *Hunt v. Con Edison Co. N.Y.C.*, No. 16-cv-677, 2018 WL 3093970, at *4 (E.D.N.Y. June 22, 2018) (citing *U.S. For & on Behalf of Mar. Admin. v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1253 (2d Cir. 1989)).  Here,

Defendants have had numerous opportunities to raise the instant affirmative defenses, since Plaintiffs filed their Complaint in 2016 including: (i) in their motion to dismiss, filed on August 8, 2016, *see* DEs [5]-[7]; (ii) in their Answer, filed on March 10, 2017, *see* DE [15]; and (iii) during the time the Court gave the parties to amend their pleadings, *see* DE [24] (Scheduling Order setting July 17, 2017 deadline for motions to amend pleadings). Because Defendants waited until the instant cross-motion to dismiss to assert their affirmative defense of exemption under NYLL § 190(3) and N.Y.C.R.R. § 142-2.14(b), they have waived these defenses. *See Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005) (statutory exemptions are affirmative defenses that will be waived if not specifically pleaded, pursuant to Fed. R. Civ. P. 8(c)). Accordingly, the Court does not consider Defendants' affirmative defenses and respectfully recommends that Defendants' cross-motion to dismiss Plaintiff's NYLL claims based on Defendants' purported status as a governmental agency and/or as a municipal government be denied.

Pursuant to Rule 15(a)(2), however, courts have discretion to allow parties to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012). In general, parties should be allowed to amend their pleadings unless there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Bryant v. Carlisle Carrier Corp.*, No. 13-cv-578, 2014 WL 712592, at *1 (E.D.N.Y. Feb. 25, 2014) (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)).

However, where a scheduling order governing the deadline for amending the pleadings is already in place, and a party seeks to amend its pleadings after the deadline has expired, the above principles must be balanced with the "good cause" standard of Fed. R. Civ. P. 16. *See Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (holding that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause [under Fed. R. Civ. P. 16(b)]."); *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, No. 02-cv-1230, 2006 WL 2242596, at *2 (S.D.N.Y. Aug. 3, 2006) ("Rule 16(b) governs leave to amend after a scheduling order has been entered in the case."). The movant bears the burden of establishing that good cause justifying the extension of the deadline to amend exists. *See Parker*, 204 F.3d at 340; *Marska v. Kalicki*, No. 06-cv-1237, 2010 WL 11606422, at *3 (E.D.N.Y. Mar. 26, 2010). Whether the requisite "good cause" under Fed. R. Civ. P. 16 exists depends, in part, on "the diligence of the moving party." *Parker*, 204 F.3d at 340; *see also Gorman v. Covidien Sales, LLC*, No. 13-cv-6486, 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014). More specifically, the standard is not met if "the pleading is based on information that the party knew, or should have known, in advance of the deadline sought to be extended." *Ahmed v. Astoria Bank*, No. 14-cv-4595, 2015 WL 4394072, at *2 (E.D.N.Y. July 16, 2015) (internal quotation marks and citation omitted); *see also Case v. Clivilles*, No. 12-cv-8122, 2016 WL 5818577, at *3 (S.D.N.Y. Oct. 4, 2016) ("A proposed amendment that

11

is 'devoid of any allegations or explanations of newly discovered facts' pertaining to the proposed amendment does not meet the standard required to show diligence.") (quoting *Guity v. Uniondale Union Free Sch. Dist.*, No. 12-cv-1482, 2014 WL 795576, at *7 (E.D.N.Y. Feb. 27, 2014)).

Pursuant to the Scheduling Order entered on April 27, 2017, the parties were required to file motions to amend the pleadings on or before July 17, 2017. *See* DE [24]. Defendants neglect to advance a theory, much less offer evidence, demonstrating that they were unaware, prior to the Court's deadline to amend pleadings, of the statutory exemptions which they now assert as affirmative defenses. Ignorance of the law cannot justify Defendants' lack of diligence. *See Sadhu Singh Hamdard Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, No. 04-cv-3503, 2009 WL 10701800, at *3 (E.D.N.Y. Jan. 8, 2009), *aff'd*, 394 F. App'x 735 (2d Cir. 2010) (internal quotation marks and citation omitted). Because Defendants have failed show good cause for an extension of the deadline under Fed. R. Civ. P. 16, the Court respectfully recommends that Defendants not be granted leave to amend their Answer to assert new affirmative defenses, and therefore, as set forth above, that their motion to dismiss based on these affirmative defenses be denied.

### B. Class Certification Pursuant to Fed. R. Civ. P. 23

Plaintiffs seek certification of a Rule 23 class for their NYLL claims. As an initial matter, pursuant to Rule 23(c)(1)(B), which requires an order certifying a class action to define the class, the Court considers how to define the putative class. *See* Fed. R. Civ. P. 23(c)(1)(B); *see also Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 267

(E.D.N.Y. 2016) ("[T]he court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision.") (internal quotation marks and citation omitted). Plaintiffs define the putative class as: "All persons who have worked as a non-exempt employee, under the FLSA and NYLL, for the Defendants at any time from six years prior to the filing of this Action to the entry of the Judgment in this action." *See* Stober Decl. ¶ 45. Because the class certification only relates to Plaintiffs' NYLL claims, the Court recommends striking the reference to the FLSA. Further, the Court recommends including the departments in which the class members work, in order to more precisely define who has "worked . . . for Defendants." Accordingly, the Court recommends that the class be defined as follows: "All current and former non-exempt employees who worked in the County of Nassau for the Board of Elections Department, the Coordinated Agency for Spanish Americans, the Department of Constituent Affairs, the Assessment Review Commission, the Comptroller's Department, the Department of Consumer Affairs, the Sheriff's Department and the Correctional Center, the Department of Social Services, the Department of the Nassau County Attorney, the Department of the Nassau County Clerk, the Department of the Nassau County Executive, the Department of the Nassau County Legislature, the Department of the District Attorney, the Fire Commission, the Department of Health, the Department of Housing, the Human Resources Department, the Nassau County Commission on Human Rights, the Information Technology Department, the Department of Investigations, the Labor Relations

Department, the Department of Minority Affairs, the Medical Examiner's Office, the Office of Emergency Management, the Office of Management and Budget, the Department of Parks and Recreation, the Police Department, the Probation Department, the Department of the Public Administrator, the Department of Shared Services, the Department of Social Services, the Nassau County Taxi and Limousine Commission, the Nassau County Traffic and Parking Violations Agency, the Department of the Treasurer, the Department of Human Services and the Department of Public Works at any time from the six years prior to the filing of this complaint to the entry of judgment in the case and who did not receive overtime compensation in a timely manner."

A party seeking class certification must establish Rule 23 requirements "by a preponderance of the evidence[.]" *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 29-30 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom.*, 483 F.3d 70 (2d Cir. 2007). While the plaintiffs' pleadings are assumed to be true, the court must nevertheless conduct a "rigorous analysis" to determine whether a class action is appropriate, and resolve factual disputes when necessary, even when doing so overlaps with the merits of the underlying claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S.Ct. 2541, 2551 (2011) (citations omitted); *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11-cv-6546, 2013 WL 93636, at *3-4 (S.D.N.Y. Jan. 9, 2013) (citations omitted). Rule 23 should be given a "liberal rather than restrictive construction," and the "Second Circuit's general preference is for granting rather than denying class certification." *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 124

14

(S.D.N.Y. 2011) (internal quotation marks and citation omitted); *Cf. Marisol A. ex rel. Forbes v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997) ("The rule's inherent flexibility, and the district court's ability to manage the litigation as it develops, counsel against decertification."). Further, where an FLSA collective action based upon the same set of facts has been certified, courts are inclined to grant class certification of related state law claims. *Hamelin v. Faxton–St. Luke's Healthcare,* 274 F.R.D. 385, 392 (S.D.N.Y. 2011) (citation omitted). As set forth above, to succeed on their motion for class certification, Plaintiffs must: (i) satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy—and show that the proposed class is ascertainable; and (ii) satisfy the requirements of Rule 23(b)(3).

i.   *Rule 23(a) Requirements*

1.   Rule 23(a)(1):  Numerosity

To satisfy the first Rule 23(a) requirement, plaintiffs must establish that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In determining whether plaintiffs have satisfied Rule 23(a)'s numerosity requirement, courts conduct a "case-by-case analysis of the facts[.]" *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012). Within the Second Circuit, "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Gortat v. Capala Bros.*, 949 F.Supp.2d 374, 383 (E.D.N.Y. 2013). When a proposed class has less than 40 members, courts consider five additional factors, known as the *Robidoux* factors, to determine whether joinder is practicable, including: (i) "judicial economy arising from the avoidance of a

multiplicity of actions"; (ii) "geographic dispersion of class members"; (iii) "financial resources of class members"; (iv) "the ability of claimants to institute individual suits"; and (v) "requests for prospective injunctive relief which would involve future class members." *Velez v. 111 Atlas Rest. Corp.*, No. 14-cv-6956, 2016 WL 9307471, at *21 (E.D.N.Y. Aug. 11, 2016) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

Here, Plaintiffs allege that the proposed class consists of 8,000 non-exempt former, current and future employees from various departments under the employ of the County, which Defendants do not dispute. *See* Pl. Opp., 3, 5; *see also* Arciello Decl. ¶ 5. Where the size of a proposed class is so large, "the impracticability of joinder is clear." *See Velez*, 2016 WL 9307471, at *21 (finding joinder impracticable where potential class consisted of at least 115 people); *see also M.F. by & through Ferrer v. N.Y. City Dep't of Educ.*, No. 18-cv-6109, 2019 WL 2511874, at *3 (E.D.N.Y. June 18, 2019) (finding joinder impracticable without considering *Robidoux* factors, where potential class consisted of over 1,000 people).

Although there exists a presumption of numerosity, the Court nonetheless considers the *Robidoux* factors and finds that they weigh in favor of a finding that joinder is impracticable. With respect to the first factor, Defendants argue that there is no judicial economy to be gained from litigating this matter as a class action because the putative class action members were made aware of the lawsuit one year ago when it was certified as a conditional collective action and those who were interested in joining have already done so. *See* Def. Opp., 8. Where a putative class

consists of less than 40 members and "all but a few" plaintiffs know about a potential class action and have chosen not to opt in to the class, it is not clear that judicial economy would be gained from litigating the matter as a Rule 23 class action. *See Shayler v. Midtown Investigations, Ltd.*, No. 12-cv-4685, 2013 WL 772818, at *7 (S.D.N.Y. Feb. 27, 2013). Such is not the case here, however, where there are 8,000 putative members and there is some uncertainty as to whether all of the putative class members have received notice of the lawsuit. *See, e.g.*, Pl. Opp., 4. Accordingly, judicial economy weighs in Plaintiffs' favor. The second factor, geographical dispersion, cuts against Plaintiffs, as Plaintiffs have offered no evidence that any potential class members live outside of Nassau and Suffolk counties. Plaintiffs' assertion that these are "large counties" does not satisfy Plaintiffs' burden of demonstrating that the proposed members "reside in such disparate locations that joinder of all members into a single action would be impracticable." *See Deen v. New Sch. Univ.*, No. 05-cv-7174, 2008 WL 331366, at *3 (S.D.N.Y. Feb. 4, 2008). With respect to the third and fourth factors—the financial resources and ability of claimants to institute individual suits—numerous potential class members may be entitled to only small recoveries and could be "dissuaded from suit where their damages [would be] low and risk of expenses in the event of unsuccessful litigation would be high." *See* Pl. Opp., 5; *see also* Stober Decl. ¶ 68. Accordingly, the third and fourth factors weigh in favor of Plaintiffs. *See Velez*, 2016 WL 9307471, at *21. Finally, the fifth factor weighs in Plaintiffs' favor as well. Plaintiffs seek to certify a class consisting of former, current and future County employees, and therefore the

proposed class consists of future class members. *See* Pl. Opp., 5. Such "fluctuating membership" of a proposed class makes joinder impracticable. *See Roubidoux*, 987 F.2d at 936 (citations omitted). Therefore, considering the potential size, limited resources and ability to bring individual suits and the possibility of future class members, the Court finds it reasonable to infer that joinder is impracticable and that the proposed class satisfies the requirement of numerosity.

### 2. Rule 23 (a)(2): Commonality

Rule 23(a)(2) is satisfied where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs must establish that class members have "suffered the same injury" and that their claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution." *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (internal quotation marks and citation omitted). Commonality may exist even where there is "some factual variation among class members' specific grievances[.]" *Han v. Sterling Nat'l Mortg. Co.*, No. 09-cv-5589, 2011 WL 4344235, at *4 (E.D.N.Y. Sept. 14, 2011) (internal quotation marks and citation omitted). Accordingly, the commonality requirement may be satisfied when the injuries of class members "derive from a unitary course of conduct," even though the members' "individual circumstances" differ. *Id.* at *3 (internal quotation marks and citation omitted). In wage cases, plaintiffs may satisfy the commonality requirement where they allege that "defendants had a common policy or practice of unlawful labor practices." *Rosario v. Valentine Ave. Disc. Store, Co.*, No. 10-cv-5255, 2013 WL 2395288, at *5 (E.D.N.Y. May 31, 2013), *report and*

*recommendation adopted sub nom.* 10-cv-5255, 2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013) (internal quotation marks and citation omitted).  The crux of commonality "is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350, 131 S.Ct. at 2551 (internal quotation marks and citation omitted).

Here, Plaintiffs assert that while many of the employees of the proposed class have different jobs and responsibilities, "they were all subject to the inTime, NUHRS, or CHIEF systems that caused, and [are] continuing to cause, the untimely payment of overtime worked by the proposed class members." *See* Pl. Mem., 7.  According to Defendants, however, the use of the three different payroll systems results in "too many material dissimilarities and too few (if any) commonalities[.]" *See* Def. Opp., 1.

All the departments, except the Police Department and the Correctional Center, use inTime.  *See* Huber Dep., 23:2-14.  The Police Department uses CHIEFS, *see id.* at 22:23-25, and the Correctional Center uses NUHRS.  *See* Def. Opp., 3.  The information entered into inTime and CHIEFS ends up in NUHRS, which is the "mainframe database," *see id.* at 29:18-21, for processing.  *See* Huber Dep., at 22:16-22, 52:14-17 (CHIEFS); 38:2-39:18, 44:12-20, 61:12-16 (inTime).  Further, each department follows the same schedule for overtime payments.  *See id.* at 50:21-51:2. While each department approves overtime payments at different rates, *see, e.g.*, *id.* at 41:23-42:7, 45:6-11, there is no evidence of differences among departments as to when overtime is paid in relation to when it is earned.  *See id.* at 50:21-51:2.

Accordingly, there is no evidence that prevents a finding of one common answer to the critical question: "Did the County engage in a pattern and practice of late-payment of earned overtime due to its payroll systems?" *See* Pl. Opp., 7. Moreover, Defendants' admission that there is no reason to believe that any nonexempt employee receives timely overtime payments supports Plaintiffs' assertion that they have raised a question that generates one common answer. *See* Huber Dep., 86:11-87:23, 87:24-89:6, 89:7-90:17, 90:18-91:24, 93:16-94:18, 94:19-96:18. Defendants also note that certain departments use handwritten records rather than timeclocks. *See* Def Opp., 3. However, there is no evidence that these departments are subject to a different payroll schedule or processing procedure. On the contrary, the only evidence regarding handwritten records is that the division within the Department of Parks and Recreation that uses handwritten records submits these records for processing to inTime, which ultimately ends up in NUHRS. *See* Huber Dep., at 23:15-23, 60:14-61:3. Similarly, Defendants note that many of the departments have their own internal Human Resources ("HR") department that is responsible for processing payroll, including overtime, but do not offer any evidence to show that this results in differences in how overtime payments are handled, especially considering that the central HR department "has constant contact with" individual HR departments. *See id.* at 33:2-34:2.

Defendants rely on the landmark case of *Wal-Mart Stores, Inc. v. Dukes*, in which the Supreme Court reversed the class certification of 1.5 million former Wal-Mart employees because they had failed to meet the commonality requirement. *See*

20

*Dukes*, 564 U.S. at 338, 131 S.Ct. at 2541.  However,"[t]he weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases."  *Morris v. Affinity Health Plan, Inc.,* 859 F.Supp.2d 611, 616 (S.D.N.Y. 2012) (collecting cases). In *Dukes*, the plaintiffs brought an action on behalf of a class comprised of female employees who had faced gender discrimination at thousands of Wal-Mart locations across the nation, alleging that the "corporate culture" made each woman "the victim of one common discriminatory practice." *Dukes*, 564 U.S. at 345, 131 S.Ct. at 2549. The Supreme Court held that the *Dukes* class failed to meet the commonality requirement because there were "literally millions of employment decisions" made by Wal-Mart managers across 50 states, and the class did not demonstrate that one common policy had resulted in the disparate treatment alleged. *Id.* at 352, 2553. Unlike in *Dukes*, the overtime payment practices challenged in this class action are not "subject to a multitude of conflicting state laws," but instead "governed by a single federal law (the FLSA) and a single state's labor laws (the NYLL)," and Rule 23 certification is subject only to New York law. *See Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 470 (S.D.N.Y. 2014).  Further, the practices Plaintiffs challenge here, "bear no resemblance to the subjective and often inherently individualized practices (*e.g.,* hiring, promotion, firing and discipline) at issue in *Dukes*." *Id.*; *see also Jackson v. Bloomberg, L.P.,* 298 F.R.D. 152, 163-64 (S.D.N.Y. 2014).  In *Dukes*, the Supreme Court was concerned that "'[w]ithout some glue holding the alleged reasons behind all of Wal–Mart's [individual employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common

21

answer to the crucial question why was I disfavored." *Pippins v. KPMG LLP*, No. 11-cv-377, 2012 WL 19379, at \*7 (S.D.N.Y. Jan. 3, 2012) (quoting *Dukes,* 131 S.Ct. at 2552).  Here, the County's overtime policy "is the 'glue' that the Supreme Court found lacking in *Dukes*."  *Id.*; *Jackson*, 298 F.R.D. at 163-64 (internal quotation marks and citation omitted).

Plaintiffs have established that the delayed overtime payments for employees across various departments are a result of the County's overtime payment procedures.  Accordingly, Plaintiffs have adequately alleged commonality.  *See, e.g.*, *Ramirez v. Riverbay Corp.*, 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) (commonality is satisfied where employees claim that they were denied overtime compensation "as a result of a corporate employment policy").

### 3.  Rule 23(a)(3):  Typicality

The third Rule 23(a) requirement—that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"—tends to merge with the commonality requirement because both requirements "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *See General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n.13, 102 S.Ct. 2364, 2370 n.13 (1982).  Rule 23(a)(3) is satisfied where "the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015) (internal quotation marks and

citation omitted); *see also Jackson*, 298 F.R.D. at 164 (typicality is "satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability") (internal quotation marks and citation omitted).  Typicality is "not highly demanding," since the claims "only need to share the same essential characteristics, and need not be identical." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).  However, where a putative class representative is subject to "unique defenses" which threaten to become the focus of the litigation, typicality will not be satisfied. *Id.* at 156.

Here, Plaintiffs' factual allegations and legal arguments apply to the proposed class across the board to all employees who have been denied timely overtime pay. Further, Defendants do not identify, and the Court does not find, that any representatives of the putative class are subject to unique defenses which could become the focus of litigation.  Therefore, the typicality requirement is satisfied because the named Plaintiffs' claims are for the same type of injury under the same legal theory as the rest of the class. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (citing *Robidoux*, 987 F.2d at 936).

4. Rule 23(a)(4):  Adequacy

The final requirement of Rule 23(a) is that the proposed class representatives will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). The purpose of Rule 23(a)(4) is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

23

625, 117 S.Ct. 2231, 2250 (1997) (citation omitted).   Accordingly, to determine whether Rule 23(a)(4) has been satisfied, courts consider whether "plaintiff's interests are antagonistic to the interest of other members of the class." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Here, Defendants argue that a conflict of interest exists because the Department of Sheriffs negotiated for the continued use of handwritten, rather than electronic, records, and this lawsuit attacks the very agreement that the Deputy Sheriffs fought to obtain.  *See* Def. Opp. 14-15.  However, Plaintiffs do not allege that the handwritten records are the cause of delay in overtime payments, or otherwise "attack" the use of such records.  Accordingly, the Court finds no conflict of interest between the proposed class representatives and the putative class and therefore finds that the proposed representatives will adequately represent the absent class members and recommends that they be appointed class representatives.

5. <u>Ascertainability</u>

Ascertainability is satisfied when a class is "defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case."  *Brecher*, 806 F.3d at 24-25 (internal quotation marks and citations omitted).  "The standard for ascertainability is not demanding," and "is designed only to prevent the certification of a class whose membership is truly indeterminable."  *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Here, whether employees have been paid the overtime wages owed to them in a timely manner is an objective question that turns on the number of hours they worked and when they were paid. *See id.* at 123 (citations omitted). Based on the instant record, the Court finds that Plaintiffs' proposed class is ascertainable. The class can clearly be determined by objective documentation, such as Defendants' employee payroll records and wage statements. Accordingly, a "mini-hearing" would not be required to identify each member of the putative class.

ii.    *Rule 23(b)(3) Requirements*

As previously discussed, in addition to Rule 23(a)'s requirements, Plaintiffs invoke Rule 23(b)(3), which requires a showing that: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," *i.e.*, predominance, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy[,]" *i.e.*, superiority. Fed. R. Civ. P. 23(b)(3).

1.    <u>Predominance</u>

Under Fed. R. Civ. P. 23(b)(3), the court has a "duty to take a close look at whether common questions predominate over individual ones." *Comcast Corp*, 569 U.S. at 34, 133 S.Ct. at 1432 (internal quotation marks and citation omitted). The predominance requirement "imposes a far more demanding inquiry into the common issues which serve as the basis for class certification." *Sykes*, 780 F.3d at 81 (internal quotation marks and citation omitted). Predominance is satisfied where resolution of some of the legal or factual questions can be achieved through "generalized proof,"

and if these questions are more substantial than those that can be resolved only though "individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotation marks and citations omitted).

Here, Plaintiffs assert one predominant question: whether the County's payroll processing systems result in the untimely payment of overtime. *See* Pl. Opp., 9. Defendants simply respond that there are "numerous dissimilarities among the putative class members." Def. Opp., 16. There is no evidence to suggest that individual questions of law and fact dominate the common ones. While various departments within the employ of the County are at issue, the evidence indicates that all departments follow the same schedule for paying the purported class members for their overtime work, *see* Huber Dep., 50:21-51:2. Similarly, the use of three different payroll systems does not create an issue that can only be resolved through individualized proof, since the information entered into each of the three systems is ultimately processed in the NUHRS. *See id.* at 22:16-22, 38:2-39:18, 44:12-20, 52:14-17, 61:10-16. Finally, Plaintiffs have offered evidence that delayed overtime payments are "typical" within the departments at issue. *See* Huber Dep., 80:14-82:11, 86:11-87:23, 87:24-89:6, 89:7-90:17, 90:18-91:24, 93:16-94:18, 94:19-96:18. While each class member will have different damages depending on the length of time they were employed, the wages they received and the hours they worked, such questions do not defeat predominance. *See Strougo v. Barclays PLC*, 312 F.R.D. 307, 313 (S.D.N.Y. 2016), *aff'd but criticized sub nom. Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) ("Issues and facts surrounding damages have rarely been an obstacle

26

to establishing predominance[.]") (citations omitted).  Accordingly, common questions of liability predominate over individual inquiries.

      2. <u>Superiority</u>

In addition to establishing predominance, Plaintiffs must also demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Among the relevant factors a Court considers are:   (i) "the interest of members of the class in individually controlling the prosecution or defense of separate actions"; (ii) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (iii) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (iv) "the difficulties likely to be encountered in the management of a class action."  *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 356 (E.D.N.Y. 2016) (internal quotation marks and citations omitted).

Here, a class action is the superior method of adjudicating the class claims.  The claims of the putative class members all involve allegations of NYLL violations committed by departments within the County  "and there is little likelihood that all of these individuals would otherwise be in a position to seek relief for any alleged overtime violations, given the expense associated with litigating these issues, [and] the relatively small pay-outs expected" by at least some class members, *see* Pl. Opp., 4; Stober Decl. ¶ 68.  *See Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 53 (E.D.N.Y. 2010).  Further, the underlying conduct allegedly took place in this judicial district.  Consequently, litigation in this Court is appropriate, and there does not

appear to be any unusual difficulty in managing this case as a class action.  Finally, the fact that this litigation has already been certified as a collective action supports the superiority of class litigation as an appropriate vehicle "given that the [NYLL] claims are nearly identical to the FLSA claims[.]"  *Poplawski v. Metroplex on the Atl., LLC*, No. 11-cv-3765, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012).  Accordingly, the Court concludes that a class action is superior to other available methods for fair and efficient adjudication of the instant claims.

Because Plaintiffs have satisfied the Rule 23(a) and Rule 23(b)(3) requirements, the Court respectfully recommends that Plaintiffs' NYLL claims be certified as a Rule 23 class action.

*iii.    Class Counsel*

Pursuant to Rule 23(g), "a court that certifies a class must appoint class counsel."[4]   Rule 23(g)(1)(A) sets forth four factors that must be considered in appointing class counsel:  "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).  A court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

---

[4] As noted in the Advisory Committee's Notes to the 2003 Amendments for Fed. R. Civ. P. 23(g), the adequacy of class counsel is now considered under Fed. R. Civ. P. 23(g), rather than as part of the adequacy requirement of Fed. R. Civ. P. 23(a)(4).

Here, Plaintiffs have not requested that Louis D. Stober be appointed as class counsel or submitted an affidavit describing his experience, which would assist the Court in assessing his adequacy as a class representative. *See, e.g.*, *Rivera*, 312 F.R.D. at 277-78. However, in light of Mr. Stober's extensive work on behalf of Plaintiffs, including his work obtaining certification of Plaintiffs' FLSA claims, the Court finds that Mr. Stober satisfies the standard set forth in Rule 23(g) and recommends that he be appointed as class counsel.

### iv.    *Proposed Notice of Pendency*

Plaintiffs propose a notice of pendency for both the FLSA and NYLL claims, which Defendants urge the Court to reject on the grounds that: (1) the first page of the proposed notice states that Defendants violated the FLSA; (2) "the proposed notice refers to the FLSA, however the class action claims only relate to Plaintiffs' claims under the [NYLL]"; (3) the proposed notice refers to the NCCSC as a defendant although it not; and (4) "the notice should require notices of exclusion to be mailed to counsel for the Defendants." *See* Def. Opp. 16-17. Plaintiffs do not raise any arguments as to why their proposed notice should be approved, but instead simply attach it as an exhibit to their motion for class certification. *See* DE [212-35].

Class members "have a due process right to notice and an opportunity to opt out of" a class action. *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012). For a class certified under Rule 23(b)(3), as here, "the court must direct to class members the best notice that is practicable under the circumstances," and such notice must "clearly and concisely state in plain, easily understood language:

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members . . ." *See* Fed. R. Civ. P. 23(c)(2)(B).  Courts are "granted discretion in overseeing the process by which putative absent class members are given notice of the action." *Gordon v. Kaleida Health*, 737 F. Supp. 2d 91, 96 (W.D.N.Y. 2010).  Accordingly, before addressing Defendants' objections, the Court notes its own observations regarding the proposed notice.  As an initial matter, the proposed notice states that the FLSA and NYLL claims have been certified by the "Supreme Court of the State of New York, County of Nassau" and should be modified to state that the claims have been certified by the "United States District Court for the Eastern District of New York." Additionally, the proposed notice does not define the class certified, as required by Rule 23(c)(2)(B)(ii), and the Court recommends that Plaintiffs be required to include the class definition discussed above. *See supra*, pgs. 13-14.  Further, pursuant to Rule 23(c)(2)(B)(vi), the notice must provide a deadline—that is 60 days after the notice is mailed—by which class members must request exclusion from the class action. *See In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-cv-5238, 2002 WL 31528478, at *6 (E.D.N.Y. June 21, 2002).

As to Defendants' first objection, the Court finds the language that "Defendants violated the [FLSA]" improper.  A notice of pendency should refer to

defendants' "alleged violations." *See, e.g.*, *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-cv-4623, 2014 WL 1338315, at *10 (E.D.N.Y. Apr. 2, 2014).  The Court recommends that Plaintiffs be required to modify the notice to make clear that the FLSA and NYLL violations are "alleged" and to include the following language in the proposed notice:  "The Court has taken no position in this case regarding the merits of Plaintiffs' claims." *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 108 (S.D.N.Y. 2003); *see also Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 61 (E.D.N.Y. 2011) (approving portion of proposed notice stating that "[t]he Judge has not decided who is right and who is wrong yet . . . ").  With respect to Defendants' second objection, the Court notes that a notice of pendency that mentions Plaintiffs' FLSA claims as well as the NYLL claims is proper because the Court has already certified the FLSA action.  *See Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 66 (S.D.N.Y. 2009).  Further, multiple courts in this Circuit have held that "in some circumstances where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time[.]" *Neris v. R.J.D. Constr., Inc.*, No. 18-cv-1701, 2019 WL 1458239, at *6 (E.D.N.Y. Mar. 29, 2019).  Plaintiffs' proposed notice, however, emphasizes the FLSA claims over the NYLL claims—for example, it mentions only the "Fair Labor Standards Act" on the first page and refers to the "NYLL" only by its acronym rather than the full name, "New York Labor Law," which could leave the average notice recipient confused as to what NYLL refers to.  Accordingly, the Court recommends that Plaintiffs be required to amend the proposed notice to give equal importance to

both the FLSA and NYLL claims.  As to Defendants' third objection, the Court agrees that the NCCSC, which was dismissed as a defendant in the early stages of litigation, *see* DE [13], should be stricken from the notice.  Finally, the Court rejects Defendants' fourth objection.  Inclusion of a defense counsel's contact information is likely to create confusion, rendering distribution or collection of consent to join forms less effective.  *See Chhab v. Darden Restaurants, Inc.*, 11-cv-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege.").  Defendants do not identify any authority requiring that notices of exclusion be sent to counsel for defendants.  Accordingly, the Court respectfully recommends that Plaintiffs' proposed notice of pendency be rejected and that Plaintiffs be required to submit a new proposed notice of pendency that includes the modifications discussed above.  The Court further recommends denying Plaintiffs' request to shift the cost of notification to Defendants, *see* Stober Decl. ¶ 51, as Plaintiffs have not provided any legitimate grounds that justify departure from the general rule that representative plaintiffs should "bear all costs" relating to notices.  *See Larsen v. JBC Legal Grp., P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006).

## IV.  CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendants' motion for judgment on the pleadings be denied and that Plaintiffs' motion to certify their NYLL claims as a Rule 23 class action be granted.  The Court

further respectfully recommends that Louis D. Stober be appointed as class counsel. Finally, the Court recommends that Plaintiffs be directed to modify the proposed notice of pendency, serve a copy of the revised proposed notice on Defendants and submit a copy to the Court for approval, after Defendants have had an opportunity to review the proposed notice and the parties have addressed any objections.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below.  Any objections must be filed with the Clerk of the Court within 14 days of receipt of this decision.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            July 16, 2019

                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge